## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**SHELBY LOWERY, III**  **CIVIL ACTION**

**VERSUS**

**NO. 17-248-BAJ-RLB**

**ACE AMERICAN INSURANCE COMPANY, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on May 13, 2019.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**SHELBY LOWERY, III**                                        **CIVIL ACTION**

**VERSUS**

**NO. 17-248-BAJ-RLB**

**ACE AMERICAN INSURANCE COMPANY, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion to Remand. (R. Doc. 77). The motion is opposed. (R. Doc. 84).

**I.    Background**

Shelby Lowery, III ("Plaintiff") initiated this action in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana on or about March 23, 2017. (R. Doc. 1-1 at 1-5). Plaintiff seeks recovery for alleged personal injuries resulting from a collision on or about December 22, 2016 involving an ambulance in which Plaintiff was a passenger and a vehicle driven by the defendant Shawn Williams. (R. Doc. 1-1 at 1). In the Petition, Plaintiff alleges that he and Mr. Williams were both residents of the State of Louisiana at the time the action was filed. (R. Doc. 1-1 at 1).

On April 21, 2017, Ace American Insurance Company and The Sherwin-Williams Company ("Sherwin Williams") removed the action, asserting that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. (R. Doc. 1). In relevant part, the removing defendants assert that at the time of removal, Mr. Williams was a "resident citizen of Georgia," and, accordingly, that there is complete diversity between the parties. (R. Doc. 1 at 3-4).

1

On June 21, 2017, Mr. Williams executed and filed a statement providing, in relevant part, (1) that he was employed by Sherwin Williams at its Prairieville, Louisiana location from November 2, 2016 to February 24, 2017 as a delivery driver, (2) that in February 2017 he moved from Baton Rouge, Louisiana to Atlanta, Georgia, and "did not intend to return to Louisiana to live permanently" at that time, (3) that on March 13, 2017, he began working for Genesis Marine, LLC ("Genesis") located in Houston, Texas as a boat captain requiring him to spend 30 days at sea at a time, (4) that he spent 30 days at sea at a time as a boat captain, but would spend his two-week intervals on land, (5) that he spent the two-week intervals visiting his mother and children in Georgia and Texas and Ashley Gibson (his fiancé at the time) in Louisiana, and (6) that he intended to move permanently to Gulfport, Mississippi later in 2017 to attend the police academy. (R. Doc. 15).

On December 13, 2017, Mr. Williams provided interrogatory responses stating, in relevant part, (1) that he lived at certain addresses in Baton Rouge from December 2003 through October 2013, (2) that he lived in Atlanta, Georgia from October 2013 through February 2016, (3) that he lived in Baton Rouge, Louisiana from February 2016 through February 2017, (4) that he lived in Atlanta, Georgia from February 2017 through May 2017, and (5) that between March 2017 and November 2017 (while working with Genesis as a boat captain) he would live at sea for approximately thirty days of the time and would spend his two-week land visits in Georgia, Texas, and Louisiana. (R. Doc. 84-1 at 5-6). The interrogatory responses also indicate that Mr. Williams does not own any real property, a vehicle, or a business. (R. Doc. 84-1 at 6-7).

Mr. Williams' deposition was taken on March 20, 2018. (R. Doc. 77-2). At the deposition, Mr. Williams stated that he had been residing in Baton Rouge, Louisiana with Ms. Gibson, and confirmed that he lived in Baton Rouge at the time of the incident. (R. Doc. 77-2 at

2

8). Mr. Williams provided other addresses at which he lived before and after the incident. (R. Doc. 77-2 at 9-11). Mr. Williams also produced a copy of his Louisiana commercial driver's license issued on January 20, 2017. (R. Doc. 77-2 at 97).

On November 29, 2018, Plaintiff filed the instant Motion to Remand, asserting that the Court lacks complete diversity of citizenship because Mr. Williams was in fact a citizen of Louisiana at the time the action was filed in state court and at the time of removal. (R. Doc. 77). Plaintiff bases this assertion on Mr. Williams' March 20, 2018 deposition testimony and the Louisiana commercial driver's license provided at the deposition. (R. Doc. 77-1 at 3-6).[1]

In opposition, Defendants argue that the deposition testimony relied upon by Plaintiff was "elicited from a line of vague, confusing questions" and "does not supplement the consistent information" provided by Mr. Williams in his written discovery responses and June 21, 2017 statement. (R. Doc. 84 at 1). Mr. Williams provides another executed statement attaching additional documents in support of a finding that he was not domiciled in Louisiana at the time the action was filed in state court or at the time of removal. (R. Doc. 84-2). First, he provides an email evidencing that he applied to become a police officer with the City of East Point, Georgia on March 2, 2017 and updated his application information on March 21, 2017. (R. Doc. 84-2 at 5). Second, he provides evidence that he was directing deposits to a Bank of America checking account opened in Atlanta, Georgia on May 18, 2017. (R. Doc. 84-2 at 8-9). Third, he provides a copy of his physical examination records from a physician in Hampton, Georgia dated May 25, 2017 in support of his application to attend the Harrison County Law Enforcement Training Academy in Mississippi. (R. Doc. 84-2 at 11-20). Finally, he provides a letter demonstrating that

---

[1] It is unclear why Plaintiff waited eight months after Mr. Williams' deposition, and less than three months prior to the scheduled trial date, to raise the issue of the Court's subject matter jurisdiction.

3

he withdrew from the Harrison County Law Enforcement Training Academy due to medical reasons in or around August 2017. (R. Doc. 84-2 at 22).

In light of the filing of the instant Motion to Remand, the district judge cancelled trial set to commence on February 11, 2019. (R. Doc. 87).

The undersigned held an evidentiary hearing on January 18, 2019 to develop the record and assess the credibility of Mr. Williams to determine his citizenship at the action was filed and subsequently removed. (R. Docs. 85, 93). Mr. Williams and Ms. Gibson both testified at the hearing, and the Court had the opportunity to weigh their credibility.[2] The Court has also considered the oral arguments of counsel and the additional documentary evidence at the hearing, most of which was already in the record. (R. Doc. 94).

## II.    Law and Analysis

### A.    Legal Standards

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different states" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)-(a)(1).[3] Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed"). "In cases removed from state court, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court." *Coury v. Prot*, 85 F.3d 244, 248–49 (5th Cir. 1996)

---

[2] Mr. Williams and Ms. Gibson were engaged to be married on January 19, 2019.
[3] There is no dispute that the amount in controversy requirement is satisfied.

(citation omitted). "If diversity is established at the commencement and removal of the suit, it will not be destroyed by subsequent changes in the citizenship of the extant parties." *Id*.

The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007). The removing party has the burden of proving federal jurisdiction and, if challenged, that the removal was procedurally proper. *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003) ("party seeking to invoke federal diversity jurisdiction bears the burden of [proof]"). Remand is proper if at any time the court lacks subject matter jurisdiction. *See* 28 U.S.C. §1447(c).

"The burden of proving that complete diversity exists rests upon the party who seeks to invoke the court's diversity jurisdiction." *Getty Oil Corp., a Div. of Texaco v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988). When jurisdiction depends on citizenship, the citizenship of each party must be "distinctly and affirmatively" alleged in accordance with § 1332(a) and (c). *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804 (5th Cir. 1991) (quoting *McGovern v. American Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir. 1975)). If, however, the plaintiff makes a good faith challenge to the factual allegations in the removal notice, then the burden is on the removing defendant to prove the existence of the jurisdictional facts. *See Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 775 (5th Cir. 1986).

"In making a jurisdictional assessment, a federal court is not limited to the pleadings; it may look to any record evidence, and may receive affidavits, deposition testimony or live testimony concerning the facts underlying the citizenship of the parties." *Coury*, 85 F.3d at 249 (citations omitted). "The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction." *Id*.

5

For an individual, "state citizenship for diversity purposes is regarded as synonymous with domicile." *Id*. "A change in domicile typically requires only the concurrence of: (1) physical presence at the new location and (2) an intention to remain there indefinitely . . .; or, as some courts articulate it, the absence of any intention to go elsewhere." *Id*. at 250. "Thus, a person who has the clear intent to change domicile does not accomplish the change until he is physically present in the new location with that intent." *Id*. "On the other hand, mere presence in a new location does not effect a change of domicile; it must be accompanied with the requisite intent." *Id*. "In most cases, the difficult issue is not presence but whether the intent to change domicile can be shown." *Id*.

"A person's domicile persists until a new one is acquired or it is clearly abandoned." *Id*. "There is a presumption in favor of the continuing domicile which requires the party seeking to show a change in domicile to come forward with enough evidence to that effect to withstand a directed verdict." *Id*. While the party attempting to show a change of domicile assumes the burden of persuasion on that issue, the "ultimate burden on the issue of jurisdiction rests with the plaintiff or the party invoking federal jurisdiction." *Id*.

The Fifth Circuit has provided various non-determinative factors in determining a litigant's domicile, and has instructed the district courts to look to all evidence "shedding light on the litigant's intention to establish domicile." *Id*. at 251. "The factors may include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Id*. "A litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts." *Id*.

6

**B.    Analysis**

The sole issue before the Court is whether Mr. Williams was domiciled in the State of Louisiana on March 23, 2017, when the lawsuit was filed, and, if so, whether he was still domiciled in the State of Louisiana on April 21, 2017, when the lawsuit was removed. As discussed below, the record indicates that Mr. Williams was domiciled in the State of Georgia at the time the lawsuit was filed in state court and at the time of removal. Accordingly, the presence of Mr. Williams in this lawsuit does not destroy complete diversity.

Mr. Williams provided a statement indicating that he moved to Atlanta, Georgia in February 2017 and that he "did not intend to return to Louisiana to live permanently" at that time. (R. Doc. 15). The record, including Mr. Williams' credible testimony, supports this assertion. Mr. Williams applied to work for Genesis on February 23, 2017, and provided a mailing address in Atlanta, Georgia. (Plaintiff's Hearing Ex. 2).[4] Mr. Williams's employment at Sherwin-Williams in Prairieville, Louisiana was terminated as of February 24, 2017. (Defendants' Hearing Ex. 1). Mr. Williams applied to become a police officer with the City of East Point, Georgia on March 2, 2017, and updated his application information on March 21, 2017 (after he started his employment with Genesis as a tug boat captain). (R. Doc. 84-2 at 5). The evidence suggests that Mr. Williams resided in Atlanta, Georgia from February 2017 until after the filing of the lawsuit on March 23, 2017. Although Mr. Williams began his employment with Genesis on March 13, 2017, he maintained a residence in Atlanta, Georgia. Mr. Williams received his paycheck from Genesis for work conducted between March 13, 2017 through April 9, 2017 at his Atlanta, Georgia address. (Defendants' Hearing Ex. 3-4). These pay stubs further indicate that Genesis withheld Georgia state taxes for those time periods.

---

[4] He also provided emergency contact information for a friend in Atlanta, Georgia and his mother in Baton Rouge, Louisiana.

7

Based on the record, the Court finds that Mr. Williams abandoned his domicile in Louisiana and acquired a new domicile in Georgia at some point between when he resigned from Sherwin-Williams on February 24, 2017 and applied to work as a police officer with the City of East Point, Georgia on March 2, 2017. Mr. Williams testified at the evidentiary hearing that he had no intention to return to Louisiana at that time, but found out on March 13, 2017 that he would not be able to pursue a career with the City of East Point unless he had certain visible tattoos removed. He also testified that he then accepted his employment with Genesis, that he remained a resident of Atlanta, Georgia, and that he had no intention of returning to Louisiana at that time. While working for Genesis just prior to and after the filing of the lawsuit, Mr. Williams had taxes withheld in Georgia and received his paycheck at a Georgia address. He set up a bank account in Georgia for direct deposit of his paychecks. While it appears that Mr. Williams subsequently intended to move to Biloxi, Mississippi while he was still employed with Genesis, the record clearly indicates that Mr. Williams intended to remain indefinitely in Georgia at the time the lawsuit was filed on March 23, 2017. He was both physically present in Georgia (when not at sea) and manifested an intention to remain there indefinitely at the time the lawsuit was filed.

The record evidence also shows that Mr. Williams did not re-establish his domicile in Louisiana at the time of removal on April 21, 2017. Ms. Gibson testified at the hearing that she and Mr. Williams began an online relationship during the month of April 2017 while Mr. Williams was working at sea.[5] On April 12, 2017, Mr. Williams changed his mailing address with Genesis to an address in Baton Rouge, Louisiana to ensure that his mail was checked while he was at sea. (Plaintiff's Hearing Ex. 1).[6] Mr. Williams received his April 28, 2017 paycheck

---

[5] Ms. Gibson testified that she did not meet Mr. Williams in person until May of 2017.
[6] Ms. Gibson testified that this was her mother's address.

from Genesis for work conducted between April 10, 2017 through April 28, 2017, at this address. (Defendants' Hearing Ex. 5).  This pay stub indicates that Genesis withheld Louisiana state taxes for this time period.  Nevertheless, Mr. Williams remained employed at sea and did not establish an intent to return to Louisiana prior to the date of removal.  He explained at the hearing that while he changed his address with Genesis on April 12, 2017, he maintained his residence in Atlanta, Georgia and had no intention of returning to live in Louisiana at that time.  Furthermore, the record indicates that on May 18, 2017, Mr. Williams was directing deposits to a Bank of America checking account opened in Atlanta, Georgia. (R. Doc. 84-2 at 8-9).  Mr. Williams also obtained a physical examination in Hampton, Georgia dated May 25, 2017 in support of his application to attend the Harrison County Law Enforcement Training Academy in Mississippi. (R. Doc. 84-2 at 11-20).  Finally, Mr. Williams provides evidence that he was seeking to enter the Harrison County Law Enforcement Training Academy until as later as August 2017. (R. Doc. 84-2 at 22).  This evidence does not demonstrate an intent to return to and remain indefinitely in Louisiana as of the time of removal.  Mr. Williams remained domiciled in Georgia at the time of removal.

That Mr. Williams held a Louisiana commercial driver's license issued on January 20, 2017 does not support a contrary conclusion, as it is consistent with his employment with Sherwin Williams in Louisiana, which ended on February 27, 2017.  Furthermore, the Court finds that the line of questioning in Mr. Williams' deposition highlighted by Plaintiff in the Motion to Remand does not establish that Mr. Williams was domiciled in Louisiana at the time the lawsuit was filed.

For the foregoing reasons, the Court concludes that Mr. Williams was a citizen of the State of Georgia at the time this lawsuit was filed in state court and removed to federal court for

9

the purposes of diversity jurisdiction. Accordingly, there is complete diversity in this action and the Court is properly exercising diversity jurisdiction pursuant to 28 U.S.C. § 1332.

### III.   Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that Plaintiff's Motion to Remand (R. Doc. 77) be **DENIED**, and a trial date and any pretrial conference be established in this action.

Signed in Baton Rouge, Louisiana, on May 13, 2019.

_____
**RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE**